**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANTHONY JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO:      06-06659** |
| **MICHAEL J. ASTRUE[1], Commissioner of the**<br>**Social Security Administration** | **SECTION: "C" (4)** |

**REPORT AND RECOMMENDATION**

**I.      Introduction**

This action seeks judicial review of a final decision of the Commissioner of Social Security

pursuant to Title 42 of the United States Code § 405(g).   The Commissioner denied Anthony

Jackson's application for Disability Insurance Benefits filed pursuant to the Social Security Act.

42 U.S.C. § 1382, *et seq.*

The matter was referred to the undersigned United States Magistrate Judge pursuant to **Title**

**28 U.S.C. § 636(b)** and Local Rule 19.02E(b) for the submission of Proposed Findings and

Recommendations.

**II.      Factual and Procedural Background**

The Plaintiff, Anthony Jackson ("Jackson"), filed an application for Disability Insurance

Benefits under Title II of the Social Security Act, alleging that he was disabled by back problems.

---

[1] The Court substitutes Michael J. Astrue, the current Commissioner of the Social Security Administration in
this case, for his predecessor, Jo Anne B. Barnhart.  Fed. R. Civ. P. 25(d)(1).

He contends that his disability began on July 31, 2000. (Tr. 98.)  At the administrative level, he received an unfavorable decision and requested a review by the Appeals Council.  The Appeals Council denied his request on March 26, 2006, and he now seeks review before this Court.

On appeal, Jackson contends that the underlying Administrative Law Judge ("ALJ") Penny M. Smith's opinion is not based upon substantial evidence because she failed to indicate the level of weight provided to the opinions of Jorge E. Isaza, M.D. ("Dr. Isaza") and Joseph Boucree, M.D. ("Dr. Boucree").  Jackson contends that Dr. Isaza's opinion is supported medically by acceptable clinical diagnostic techniques and is consistent with other substantial evidence in the record.  As such, he contends that the ALJ's decision should be reversed.

The Commissioner, on the other hand, contends that the ALJ properly weighed and considered all the medical evidence but could reject the opinion of his physician where, as here, the evidence supports a contrary conclusion.

### III.    Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court may not re-weigh the evidence, try issues *de novo,* or substitute its judgment for that of the Secretary.  *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.  *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater, 67*

F.3d 552, 555 (5th Cir. 1995).  It must do more than create a suspicion of the existence of the fact

to be established, but no "substantial evidence" will be found only where there is a "conspicuous

absence of credible choices" or "no contrary medical evidence."  *Payne v. Weinberger*, 480 F.2d

1006, 1007 (5th Cir. 1973).

A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails

to resolve, a conflict created by countervailing evidence.  Evidence is not substantial if it is

overwhelmed by other evidence, particularly evidence offered by treating physicians.  *Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is

substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating

and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his

age, education, and work history."  *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D.

La. Feb. 14, 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

IV.     <u>Analysis</u>

A.     <u>Treating Physicians' Controlling Opinions</u>

Jackson contends that the ALJ's opinion is not based upon substantial evidence because it

failed to give controlling weight to the well-documented findings set forth by his various treating

doctors.   He contends that the ALJ illegally made her determination on a single orthopedic

consultant for disability determination services, namely a visit with Miljana Mandich, M.D. ("Dr.

Mandich").  (Pl.'s Br. 6.)  Consequently, he alleges the ALJ failed to consider the factors found

required under 20 C.F.R. § 404.1527.

The Commissioner contends, however, that the ALJ considered the required factors under

§ 404.1527 and also articulated supporting reasons in the decision for the weight she gave the treating physician's opinion. Therefore, the Commissioner contends that the ALJ's decision is based upon substantial evidence.

The criteria at issue, 20 C.F.R.§ 404.1527, provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527.

Under the regulations, a treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R.§ 404.1527(a)(2). The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176; 20 C.F.R. § 404.1527(d)(2).

The record shows that the ALJ reviewed the medical records of Drs. Isaza and Boucree, Jackson's treating physicians. (Tr. 17.) According to the ALJ, Jackson first received treatment in December 2002 from Dr. Boucree. Upon his initial visit, he complained of lower back and leg pain for three months after a motor vehicle accident which occurred on August 14, 2002. (Tr. 19.) He described his lower back symptoms as including a burning, aching, and dull numbing sensation. (Tr. 19.) According to the ALJ, Dr. Boucree noted that Jackson complained of paraspinal tenderness to percussion and palpation about his lower lumbar spine. His thoracolumbar ranges of motion were

4

moderately decreased in all planes, his sensation was normal and his motor strength was 5/5 in all muscles of his lower extremities, except for his extensor hallucis longs which was 4/4 bilaterally.

The ALJ noted that according to Dr. Boucree, the x-rays of Jackson's spine were normal and showed that his disc spaces were well maintained with marginal osteophytes present at L3-4 and L4-5 and disc space narrowing at L5-S1. (Tr. 19.) He noted Dr. Boucree's diagnosis of lumbar spondylosis and degenerative disc disease with radiculitis and a herniated disc of the lumbar spine. (Tr. 19.) Dr. Boucree further encouraged Jackson to quit smoking and to quit consuming narcotic medication and recommended a steroid injection, which Jackson declined because he was afraid, according to the ALJ. (Tr. 20.) Thereafter, Jackson was again seen by Dr. Boucree on June 18, 2003 at which time Dr. Boucree discussed the various treatment options available to Jackson and again encouraged Jackson to decrease smoking. (Tr. 20.)

According to the ALJ, on April 2, 2004, Jackson was seen by Dr. Mandich, a medical consultant who examined him for the Disability Determination Services. Dr. Mandich indicated that in September 2002, Jackson had an MRI of his lumbar spine which showed a mild disc bulge with a small right paracentral disc herniation at the L4-5 level resulting in mild impingement on the ventral thecal sac. (Tr. 21.) He noted that Jackson's reflexes were normal, he walked well, and had normal ranges of motion in his upper and lower back. (Tr. 22.) Dr. Mandich observed that Jackson could walk on his heels and toes and squat all the way down and rise without support. (Tr. 22.)

The ALJ noted that according to the records, Jackson was previously seen by Dr. Boucree because Dr. Isaza had been out of the office at that time. (Tr. 23.) He also indicated that Dr. Isaza's notes from October 25, 2004 were not in the record but that the medication sheet revealed that Jackson had been prescribed Skelaxin and Lortab. (Tr. 23.) According the opinion, he reviewed

the MRI results which indicate that Jackson had (1) developed of a left foraminal soft disc protrusion L3-4 with L3 nerve root displacement and (2) continued facet arthropathy and disc bulging at the lower two levels.  (Tr. 23.)

The ALJ further noted that Jackson returned for a follow up visit on November 1, 2004, where Dr. Isaza opined that the Skelaxin had caused Jackson nausea.  On physical examination, Dr. Isaza observed that Jackson's lumbar flexion was 60 degrees (with 90 degrees being normal), extension was 5 degrees (with 30 degrees being normal) and bilateral bending was 20 degrees (with 30 degrees being normal).  (Tr. 23.)  He further noted that his motor function was with normal limits of the lower extremities, reflexes were symmetric in his lower extremities, and straight leg raising was negative with sensations intact. (Tr. 23.)

The ALJ found that Jackson's MRI showed a left L3-4 disc herniation, as well as desiccation at the L4-5 and L5-S1 levels.  Additionally, Jackson exhibited bilateral sacroiliac joint changes and was diagnosed with an L3-4 herniated nucleus pulposis, degenerative disc disease at L4-5 and L5-S1, and sacroilititis.  Dr. Isaza, according to the ALJ, ordered a left L3-4 transforaminal injection by Dr. Turnipseed and prescribed Lortab and Soma for Jackson instructing him to return in one month.  (Tr. 23.)

The ALJ observed that Jackson complied with Dr. Isaza's instructions and had the steroid injection which resulted in 40% improvement in his low back and left hip pain.  (Tr. 23.)  Jackson reported resolved leg pain but continued numbness and tingling in his buttock.  Another steroid injection was therefore recommended.  (Tr. 23.)  However, the ALJ noted that after the second injection, the complaints of tingling in the buttock continued along with low back pain, left hip pain, and thigh pain.  She further found that Jackson reported a pain intensity of 6-7 out of a 10 point

scale. (Tr. 23.)

The ALJ indicated that during December 2004, a physical examination of Jackson illustrated that his motor functions in his lower extremities were within normal limits, reflexes in his lower extremities were within lower limits, straight leg raising tests were negative and despite these results he reported bilateral low back pain. (Tr. 23-24.) His sensations were intact bilaterally. (Tr. 24.) The ALJ further found that Dr. Isaza opined that the MRI showed a compromising of the left L3 nerve root and that Jackson refused another injection but requested surgery. (Tr. 24.) Dr. Isaza therefore recommended a left far lateral L3-4 discectomy. (Tr. 24.)

The ALJ noted that Dr. Isaza performed a bilateral microdiscectomy at L3-4 on Jackson on July 5, 2005, and Jackson was released from the hospital on July 6, 2005. (Tr. 24.) After detailing his medical treatment with Dr. Isaza, he concluded that Jackson retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He also indicated that Jackson could sit, stand or walk 6 hours out of an 8 hour day with the option to alternate between sitting and standing every 20 minutes. (Tr. 24.) Accordingly, Dr. Isaza opined that Jackson could not climb ladders, ropes, or scaffolds and could only occasionally climb stairs or ramps balance, stoop, bend, crouch, or crawl. (Tr. 24.)

Upon reviewing the ALJ's opinion, the Court concludes that the ALJ went to great lengths to detail the length of treatment and results of the treatment provided by Dr. Isaza. The ALJ relied upon a medical note of September 16, 2005, which referred to a decrease in Jackson's symptoms post-surgery and indicated that Jackson reported "non pain or numbness as before the surgery." Dr. Isaza recommended physical therapy but made no mention that Jackson could not work. While the ALJ did not follow the technical requirements of the regulations by expressly stating that she gave

7

controlling weight to the treating physician, this error is  harmless  because the opinion details the degree to which the ALJ reviewed, relied and considered Jackson's improved symptoms.  In light of Jackson's medical improvement post-surgery, the Court finds that the ALJ properly considered § 404.1527 factors.  The ALJ's decision is consistent with the medical evidence, which showed reduced symptoms and medical improvement.

**B.      Credibility Determination**

Jackson also complains that the ALJ erred because she relied heavily on the "clerical errors" that referenced the alleged onset date of the disability, degree of pain, and delay in treatment.  He complains that he should not be penalized because of the errors of others, for the actual onset date is August 14, 2002.  He therefore contends that the ALJ's conclusion as to his credibility was not grounded in or supported by the evidence.  Jackson contends that the ALJ's treatment of his allegations, credibility, and inability to obtain medical treatment for one year constitutes reversible error.

The Commissioner responds that the ALJ properly determined Jackson's credibility.  In so doing it contends that determining credibility is in the province of the ALJ.

An ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record. *Foster v. Astrue*, No. 07-51242, 2008 WL 1983424 (5th Cir. May 08, 2008).  Credibility determinations are generally entitled to great deference.  *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000); *see Gonzales v. Astrue*, 231 Fed.Appx. 322 (5th Cir. 2007) (adverse credibility determination made by an ALJ with respect to claimant seeking social security disability benefits was supported by inconsistencies in claimant's testimony and between claimant's testimony and documentary evidence).

The ALJ held that Jackson's allegations regarding his limitations were not entirely consistent with the medical evidence of record or entirely credible. She initially indicates that Jackson originally reported that the disability onset date was July 31, 2000. She noted further that Jackson later stopped working on that date as a truck driver for a truck company. (Tr. 24-25.) However, a different work history report indicated that Jackson stopped working as a truck driver in 1999, one year earlier. (Tr. 25.)

The ALJ further noted that when Jackson was seen for emergency care at Summit Hospital, in December 2001 and in June 2003, he listed his employer as River Side Roofing in Metairie, Louisiana. (Tr. 25.) However, in October 2004, he told a different story to Dr. Isaza, reporting that he last worked in October 2003 and that he had been disabled since that date. He now claims that his disability began on August 14, 2002. (Tr. 25.)

The ALJ found that Jackson's allegations regarding his limitations were not entirely consistent with the medical evidence of record. She further found that his lack of honesty or candor on the issue regarding the onset date of his alleged disability cast doubt on his credibility concerning his ability to work since he reported that he told several medical providers that he last worked June 2003, though claiming an onset date of August 14, 2002. The ALJ noted that he told the hospital on December 20, 2001 that he was employed by River Side Roofing at the time he was injured while a passenger in the front of a vehicle. (Tr. 25.) Therefore, based upon Jackson's representations, the ALJ found that Jackson underestimated his ability to engage in work. The ALJ further noted that even if Jackson did not work substantially after his alleged onset date of August 14, 2002, the fact that he worked at all diminishes his contention of disability. (Tr. 25.)

Jackson claims that the different dates that are referenced in the record for the onset of his

disability were all entry errors by third party providers.  However, the record contradicts this assertion.  Most notably, there is at least one patient intake form which was handwritten and signed by Jackson that contains a date other than August 14, 2002, or a date in October of 2002. (Tr. 122.)

The Court is not persuaded that the ALJ's conclusion regarding Jackson's credibility was not grounded in support or by the evidence of record.  Therefore, the Court finds that the ALJ sufficiently supported his credibility assessment by references to the record such that they are entitled to judicial deference. *Villa v. Sullivan* 895 F.2d 1019, 1022, 1024 (5th Cir. 1990).  Therefore her opinion is supported by substantial evidence and should be affirmed.

## V.      Recommendation

The Court therefore finds that the ALJ's decision is based upon substantial evidence and should be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 22nd day of July, 2008

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**